UNITED STATES DISTRICT COURT
FOR THE WESTERN DISCTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| VICKY PRUITT, ADMINISTRATOR OF THE ESTATE OF HAROLD JEFFERSON BRAY, DECEASED<br><br>        Plaintiff,<br><br>v.<br><br>BROC, LLC<br>**Serve: CT Corporation**<br>      **Registered Agent**<br>      **4701 Cox Road, Suite 285**<br>      **Glen Allen, VA  23060**<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW the plaintiff, Vicky Pruitt, Administrator of the Estate of Harold Jefferson Bray, deceased, by counsel and files this Complaint against the defendant, and in support thereof states as follows:

### PARTIES

1. At the time of his death, the decedent was a citizen of Virginia.

2. The defendant, BROC, LLC is a limited liability company that maintains its principal place of business at 3603 Horseshoe Drive South, Suite 100, Naples, Florida, 34104.

3. At all times pertinent to this action, a patient-health care provider relationship existed between the decedent, Harold Jefferson Bray ("Mr. Bray") and BROC, LLC ("Blue Ridge Nursing Center").

4. At all times and places pertinent to this action, Blue Ridge Nursing Center was acting through its employees, agents, and/or servants, including Nurse Townsend; Nurse Belcher, LPN; and Nurse Swanson.

5. At all times and places pertinent to this action, Nurse Townsend; Nurse Belcher, LPN; and Nurse Swanson were acting within the course and scope of their employment with Blue Ridge Nursing Center.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction of this case on the basis of diversity of citizenship under 28 U.S.C. § 1332 as every issue of law and fact in this action is wholly between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. A substantial part of the events or omissions giving rise to this claim occurred in this judicial district and thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTS

8. On October 25, 2011, Mr. Bray was admitted to Blue Ridge Nursing Center.

9. At the time of his admission to Blue Ridge Nursing Center, Mr. Bray was able to walk independently.

10. On October 25, 2011, Nurse Townsend conducted a Fall Risk Assessment for Mr. Bray.

11. Nurse Townsend concluded that Mr. Bray had a Fall Risk score of 12.

12. At the time that Nurse Townsend conducted a Fall Risk Assessment for Mr. Bray, Blue Ridge Nursing Center considered patients with a Fall Risk score of 12 to be a high risk for falling.

13. At the time that Nurse Townsend conducted a Fall Risk Assessment for Mr. Bray, Mr. Bray was a high risk for falling.

14. When Mr. Bray's fall risk was reassessed on January 25, 2012 and April 30, 2012, his Fall Risk score remained a 12.

15. On October 25, 2012, Dr. Vincent Jones, MD ordered that Mr. Bray receive a WanderGuard. He ordered that its placement be checked every shift and its function be checked every week.

16. On April 11, 2012, Dr. Jones ordered the WanderGuard's use to be discontinued.

17. At approximately 1:30 a.m. on July 2, 2012, Blue Ridge Nursing Center's employees heard calls for help, and upon investigation, found Mr. Bray had fallen in his room.

18. Nurse Swanson documented that Mr. Bray had been out of bed walking around in his room when he fell.

19. At approximately 2:25 a.m. on July 12, 2012, Blue Ridge Nursing Center transferred Mr. Bray to Wake Forest Baptist Medical Center for x-rays and treatment.

20. At Wake Forest Baptist Medical Center, Dr. Gregory Peters, MD concluded that Mr. Bray had a comminuted, angulated proximal right femur fracture.

21. Mr. Bray's fall on July 2, 2012 caused his right femur fracture.

22. Mr. Bray underwent an open reduction internal fixation at Wake Forest Baptist Medical Center.

23. On July 12, 2012, Mr. Bray was transferred back to Blue Ridge Nursing Center.

24. When Mr. Bray was readmitted to the defendant's facility, among the changes noted in his condition was "staying in bed."

21208/1/6558484v1

25. As a result of the fracture to his hip, Mr. Bray was confined to his bed and a "Geri chair" for the remainder of his life.

26. On July 2, 2012, Blue Ridge Nursing Center documented that Mr. Bray weighed 131 lbs.

27. On July 2, 2012, Blue Ridge Nursing Center knew or should have known that Mr. Bray weighed 131 lbs.

28. On July 12, 2012, Blue Ridge Nursing Center documented that Mr. Bray weighed 128.5 lbs.

29. On July 12, 2012, Blue Ridge Nursing Center issued a Weight Order Notification, which required Mr. Bray to be weighed four times each week.

30. On July 17, 2012, Blue Ridge Nursing Center documented that Mr. Bray weighed 125 lbs.

31. On July 17, 2012, Blue Ridge Nursing Center knew or should have known that Mr. Bray weighed 125 lbs.

32. On July 12, 2012, one of Blue Ridge Nursing Center's employees performed a Dehydration Risk Assessment.

33. The Dehydration Risk Assessment provided that Mr. Bray had not lost weight.

34. The Dehydration Risk Assessment did not provide that Mr. Bray had lost more than three pounds in one month.

35. Mr. Bray's Dehydration Risk Assessment scored him as an 8.

36. The Dehydration Risk Assessment provides that any patient with a score higher than an 8 is at a "high risk" for dehydration.

21208/1/6558484v1

37. Had the Dehydration Risk Assessment of Mr. Bray accurately reflected his documented weight loss, it would have given him a score of nine, indicating that he was a "high risk" for dehydration.

38. On July 12, 2012, Mr. Bray's diet was directed to be pureed regular meals with nectar as a thick liquid.

39. On July 16, 2012, this diet was altered to include "health shakes" and "superfoods."

40. Subsequently, the defendant did not record Mr. Bray's dietary intake.

41. At approximately 9 a.m. on July 23, 2012, Mr. Bray was alert but unresponsive to his surroundings. Mr. Bray was unable to swallow his medication and he had a fluctuating pulse.

42. At approximately 1:10 p.m., Mr. Bray was admitted to Memorial Hospital of Martinsville with a diagnosis of sepsis pneumonia.

43. Medical staff at Memorial Hospital of Martinsville noted that Mr. Bray was severely dehydrated.

44. Subsequently, Mr. Bray received chest x-rays. These x-rays revealed that Mr. Bray had right middle lobe pneumonia.

45. Mr. Bray died of pneumonia on July 24, 2012.

## MALPRACTICE

46. Blue Ridge Nursing Center had a duty to provide Mr. Bray with reasonable care and treatment.

47. Blue Ridge Nursing Center breached the standard of care and was negligent in its care of Mr. Bray. Blue Ridge Nursing Center breached the standard of care in the following respects:

      a.      It failed to adequately assess Mr. Bray's fall risk;

      b.      It failed to properly implement the appropriate falls risk precautions; and

      c.      It failed to adequately assess Mr. Bray's dehydration risk.

PROXIMATE CAUSE AND DAMAGES

48. Had Blue Ridge Nursing Center properly implemented the appropriate falls risk precautions then Mr. Bray, would not have fallen on July 2, 2012.

49. Had Mr. Bray not been immobilized by his fall, Mr. Bray would not have contracted pneumonia on July 23, 2012 and died.

50. Had Blue Ridge Nursing Center properly met Mr. Bray's hydration needs, Mr. Bray would not have died on July 24, 2012.

51. Because of Blue Ridge Nursing Center's negligence, Mr. Bray sustained injuries which caused his death on July 24, 2012.

52. Blue Ridge Nursing Center's negligence proximately caused Mr. Bray's death.

53. As a consequence of Mr. Bray's death, the defendant is responsible for the medical expenses incurred for his treatment necessitated by their negligence, and is responsible for the funeral and burial expenses incurred because of his death.

54. The statutory beneficiaries pursuant to the law of Virginia are Mr. Bray's daughters, Janet Sheets and Vicky Pruitt. With respect to the persons qualified as statutory beneficiaries, the plaintiff requests that damages be awarded pursuant to the Virginia Death by Wrongful Act statutes, Virginia Code § 8.01-50, *et. seq.*

55. Vicky Pruitt duly qualified as Administrator of the Estate of Harold Jefferson Bray on September 12, 2012 in the Circuit Court for the City of Danville.

21208/1/6558484v1

CONCLUSION

WHEREFORE, Vicky Pruitt, Administrator of the Estate of Harold Jefferson Bray, deceased, moves this Court for judgment against the defendant in the amount of THREE MILLION DOLLARS ($3,000,000.00) plus her taxable costs with pre-judgment and post-judgment interest.

The plaintiff demands a trial by jury.

VICKY PRUITT, ADMINISTRATOR
OF THE ESTATE OF HAROLD
JEFFERSON BRAY, DECEASED

By: _____
         Counsel

S. D. Roberts Moore (VSB No. 3456)
Anthony M. Segura (VSB No. 79040)
GENTRY LOCKE RAKES & MOORE, LLP
800 SunTrust Plaza
P. O. Box 40013
Roanoke, VA  24022-0013
(540) 983-9300
Fax:  (540) 983-9400
Email: moore@gentrylocke.com
       segura@gentrylocke.com

Randall J. Trost (VSB No. 17524)
RANDALL J. TROST, P.C.
801 Main Street, Suite 1001
Lynchburg, VA  24504-1520
(800) 876-1343
Fax:  (434) 847-0814
Email: RJTrost@TrostLaw.com

*Counsel for Plaintiff*